**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| HTC CORPORATION and<br>HTC AMERICA, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>INNOVATION SCIENCES, LLC,<br><br>    Defendant | JURY TRIAL DEMANDED |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs HTC Corporation and HTC America, Inc. (collectively, "Plaintiffs" or "HTC"), by and through their attorneys, hereby allege as follows:

1.       Through this complaint, Plaintiffs seek declaratory judgment that U.S. Patent No. 10,104,425 (the '425 patent) is directed to patent ineligible subject matter under 35 U.S.C. § 101.

2.       This Court has previously found substantially similar claims of patents related to the '425 patent to be ineligible under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l et al.*, 134 S.Ct. 2347 (2014).  The Honorable Judge Liam O'Grady granted a motion to dismiss eight patents related to the '425 patent as being ineligible under § 101 in two earlier cases, *Virginia Innovation Scis., Inc. v. HTC America, Inc.*, Civ. No. 1:16-cv-1350 (E.D. Va. Jan. 5, 2017) and *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, Civ. No. 1:16-cv-00861 (E.D. Va. Jan. 5, 2017) (hereinafter, "*Amazon I*").  *Virginia Innovation Sciences Inc. v. Amazon.com, Inc.*, 227 F. Supp. 3d 582 (E.D. Va. Jan. 5, 2017).  That opinion was subsequently appealed and affirmed by the Federal Circuit. *Virginia Innovation Scis., Inc. v. HTC Corp.*, 718 F. App'x 988 (Fed. Cir. 2018).

- 1 -

3.      After dismissal of these eight patents, this Court also granted summary judgment of patent ineligibility with respect to U.S. Reissue Patent No. 46,140 under § 101 and non-infringement with respect to U.S. Patent No. 8,135,398 patent in *Amazon I*.  *See Innovation Sciences, LLC v. Amazon.com, Inc.*, --- F. App'x ----, No. 2018-1495, 2019 WL 2762976 (Fed. Cir. July 2019).  These judgments were also affirmed by the Federal Circuit.  *Id.*

4.      While appeals were pending from the cases above, Virginia Innovation Sciences, Inc. ("VIS"), the predecessor entity of Defendant Innovation Sciences LLC ("Innovation Sciences" or "Defendant"), filed two more cases against HTC and Amazon in this District, *Virginia Innovation Sciences, Inc. v. HTC Corp.*, 3-17-cv-00560 (E.D. Va. 2017), and *Virginia Innovation Sciences, Inc., v. Amazon.com, Inc.*, 2-17-cv-00422 (E.D. Va. 2017).  After HTC sent VIS a Rule 11 letter raising concerns that (1) venue was not proper as to HTC America, Inc. following the Supreme Court's decision in *TC Heartland LLC v. Kraft Food Gp. Brands LLC,* 137 S. Ct. 1514 (2017) and (2) VIS was asserting claims substantially similar to those found by this Court to be ineligible under § 101 (see Ex. F), VIS voluntarily dismissed these cases in October 2017 before HTC or Amazon responded to the complaint in their respective cases.

5.      Nine months later, VIS filed a third case against HTC Corporation (but not HTC America, Inc.) in the Eastern District of Texas, asserting infringement of another three patents, all of which are related to the eight patents previously held unpatentable under 35 U.S.C. § 101. *Virginia Innovation Sciences, Inc. v. HTC Corp.*, Civ. No. 4:18-cv-000476 (E.D. Tex. filed Jul. 5, 2018), now consolidated in *Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, Civ. No. 4:18-cv-00474 (E.D. Tex. filed Jul. 5, 2018) (the "E.D. Tex. Action").

6.      On December 6, 2018, and after defendants in related cases (including Amazon) moved to transfer the E.D. Tex. Action to this Court, VIS filed a motion to substitute Innovation

Sciences LLC for VIS on the basis of an alleged merger between VIS and Innovation Sciences, whereby VIS was terminated and Innovation Sciences was the surviving entity.  The CEO and President of VIS, Dr. Tiehong "Anne" Wang, executed the merger documents on behalf VIS and on behalf of Innovation Sciences, but under the alias "Anne Wong" as its "Manager."

7.      On December 27, 2018, HTC Corporation moved to transfer under 28 U.S.C. 1401 for *forum non conveniens*, in particular considering this Court's familiarity with the patent family and subject matter of the patents at issue in the E.D. Tex. Action.  On July 15, 2019, the District Court for the Eastern District of Texas issued an opinion denying the motions to transfer of HTC and the other consolidated defendants in the E.D. Tex. Action.  A petition for *writ of mandamus* to the Federal Circuit was denied on October 9, 2018.

8.      On August 9, 2019, Innovation Sciences filed a complaint at the International Trade Commission, alleging infringement of claims 14-18 and 45-48 of U.S. Patent No. 10,104,425 (Ex. A at 1, "ITC Complaint"), and identifying, among others, HTC Corporation and HTC America, Inc. as proposed respondents.  *Id.* at 2.

9.      With respect to HTC, Innovation Sciences identified three accused devices, the HTC U11, the HTC U11 Life, and the HTC U12+ smartphones of allegedly infringing at least claims 14 and 45 of the '425 patent.  *Id.* at 13-15.  Attached to the ITC Complaint as Exhibits 22 and 23, are claim charts that Defendant alleges demonstrate infringement of independent claim 45 and 14 of the '425 patent by HTC.

10.     For the reasons stated in paragraphs 2-9 herein, the threat of suit by Defendant against HTC alleging infringement of the '425 patent is real and not idle.

11.     For this action, Plaintiffs seek a declaration that the '425 patent is unpatentable as directed to patent ineligible subject matter under 35 U.S.C. § 101.

12.     A number of exhibits are attached to this complaint. Those exhibits are listed below:

13.     Attached hereto as Exhibit A is a true and correct copy of the public version of the Complaint filed in *Certain Wireless Communication Devices and Related Components Thereof*, No. 337-3402, filed August 9, 2019 at the International Trade Commission, with Exhibits 22-23 to the Complaint (infringement claim charts against HTC).

14.     Attached hereto as Exhibit B is a true and correct copy of U.S. Patent No. 10,104,425.

15.     Attached hereto as Exhibit C is a true and correct copy of U.S. Patent No. 7,899,492.

16.     Attached hereto as Exhibit D is a true and correct copy of U.S. Patent No. 8,903,451.

17.     Attached hereto as Exhibit E is a true and correct copy of a printout of the business entity details of Virginia Innovation Sciences, Inc. from the Virginia Council for Corporations website, found at https://cis.scc.virginia.gov/ (printed December 23, 2019).

18.     Attached hereto as Exhibit F is a true and correct copy of letter dated October 3, 2017 from counsel for HTC, Yar R. Chaikovsky, to then counsel for VIS, William E. Bradley raising Rule 11 concerns regarding the complaint filed by Mr. Bradley and VIS in *Virginia Innovation Sciences, Inc. v. HTC Corp.*, 3-17-cv-00560 (E.D. Va. 2017).

19.     Attached hereto as Exhibit G is a true and correct copy of the public version of the Declaration of Tiehong "Anne" Wong a/k/a Tiehong Wang, dated May 23, 2019, in support of the Complaint filed in *Certain Wireless Communication Devices and Related Components Thereof*, No. 337-3402, filed August 9, 2019 at the International Trade Commission ("Wong

Declaration").

20.     Attached hereto as Exhibit H is a true and correct copy of Defendant's motion to substitute party, including supporting declaration and exhibits, filed in *Virginia Innovation Sciences, Inc. v. HTC Corp.*, Civ. No. 4:18-cv-00476-ALM (E.D. Tex. filed Jul. 5, 2018), Dkt. No. 15.

## I.     PARTIES

21.     Plaintiff HTC Corporation is a Taiwanese corporation with its principal place of business at No. 88, Section 3, Zhongxing Road, Xindian District, New Taipei City 231, Taiwan.

22.     Plaintiff HTC America, Inc. ("HTC America") is a Washington corporation with its principal place of business at 308 Occidental Ave S, Seattle, WA 98104.  HTC America is a wholly-owned American subsidiary of HTC Corporation that sells consumer electronic devices, including cellular and wireless devices, in the United States.

23.     Founded in 1997, HTC is a pioneer in the smartphone market, credited with many industry firsts and technology breakthroughs over the past 22 years—a history defined by innovation, design and engineering excellence, and the building of strategic partnerships to facilitate the development of an industry ecosystem.  In addition to HTC smartphones, HTC has also expanded its portfolio of technical expertise to include cutting-edge virtual reality technology, as embodied by the HTC Vive virtual reality platform.

24.     Defendant Innovation Sciences LLC has alleged that it is a limited liability company incorporated under the laws of the State of Texas, with an office located at 5800 Legacy Circle, Suite 311, Plano Texas 75024.  Ex. A at 3.

25.     Defendant Innovation Sciences LLC has alleged that Dr. Tiehong "Anne" Wong is the CEO and President of Innovation Sciences.  Ex. A at 3; Ex. G at ¶ 1.  In the Wong

Declaration, Dr. Wong states that she has "held this position since Innovation's formation in 2005," presumably referring to the formation of the predecessor entity, VIS, f/k/a/ Sellerbid, Inc. *Id.* at ¶¶ 10, 14.  On information and belief, Dr. Wong is the sole employee, officer and director of Innovation Sciences.

26.     SellerBid, Inc. (later renamed as VIS in 2012) was formed as a Virginia company, and had its principle place of business located in Virginia at 6301 Edsall Rd., #517, Alexandria, VA 22312.  Ex. E; Ex. G at ¶¶ 14-15.

27.     Defendant Innovation Sciences has alleged that in 2018, Virginia Innovation Sciences, Inc. was merged into Innovation Sciences, LLC.  Ex. A at 4; Ex. G at ¶ 17; Ex. H.

28.     On information and belief, Innovation Sciences maintains contacts to the Eastern District of Virginia, at least through the presence and residences of Tiehong "Anne" Wang and/or VIS in the Eastern District of Virginia.  In the Wong Declaration, Dr. Wong refers to the residence in Alexandria, VA as a facility that "support[s] Innovation's research and development, patent procurement, and licensing of Innovation's patented technology." Ex. G at ¶ 15.  On information and belief, Dr. Wong and/or Innovation Sciences still own this facility.

29.     On information and belief, Alexandria, VA is located within Fairfax County in the Eastern District of Virginia.

## II.     JURISDICTION AND VENUE

30.     The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 2201-2202 because this action arises under the patent laws and seeks relief under the Federal Declaratory Judgment Act.

31.     This Court has subject matter jurisdiction over this action based on a real and immediate controversy between HTC and Defendant regarding whether the '425 patent is

directed to patent ineligible subject matter under 35 U.S.C. § 101. As detailed below, this controversy arises out of Defendant's infringement assertions against HTC, at least demonstrated by Defendant's filing of its complaint before the International Trade Commission. Ex. A.

32.     Based on the facts and causes alleged herein, this Court has personal jurisdiction over Defendant.

33.     In 2011, Defendant's predecessor SellerBid, Inc. began substantial licensing activities for its patent portfolio, which included the initiation of patent litigations in the U.S. District Court for the Eastern District of Virginia. Ex. G at 4. *See, e.g.*, *Sellerbid, Inc. v. Groupon, Inc.*, Civ. No. 1:11-cv-00768 (E.D. Va. July 20, 2011). Upon information and belief, SellerBid, Inc. conducted patent licensing activities, including negotiations (whether in person, telephonically, or electronically), and signed patent licenses within the Eastern District of Virginia.

34.     In 2012, Defendant's predecessor SellerBid, Inc. changed its name to Virginia Innovation Sciences, Inc. Ex. A at 4; Ex. G at 4. According to Defendant's President and CEO, this name change was "to reflect the nature of its business operation and market position." Ex. G at 4.

35.     In 2013, Defendant's predecessor Virginia Innovation Sciences, Inc. bought a facility at 6301 Edsall Road, Suite 517, Alexandria, VA to support its patent licensing efforts. Ex G at 4. This facility is located within the Eastern District of Virginia.

36.     Defendant's predecessor, Virginia Innovation Sciences, Inc., filed numerous patent infringement complaints in the U.S. District Court for the Eastern District of Virginia. *See, e.g.*, *Virginia Innovation Scis., Inc. v. LG Elec., Inc.*, Civ. No. 1:16-cv-00128 (E.D. Va. filed Feb. 8, 2016); *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, Civ. No. 1:16-cv-00861 (E.D. Va.

filed July 5, 2016); *Virginia Innovation Scis., Inc. v. HTC Corp.*, Civ. No. 1:16-cv-01350 (E.D. Va. filed Feb. 8, 2016); *Virginia Innovation Scis., Inc. v. Samsung Elec. Co., Ltd.*, Civ. No. 2:12-cv-00548 (E.D. Va. filed Oct. 4, 2012); *Virginia Innovation Scis., Inc. v. Samsung Elec. Co., Ltd.*, Civ. No. 2:13-cv-00332 (E.D. Va. filed June 14, 2013); *Virginia Innovation Scis., Inc. v. Samsung Elec. Co.*, Ltd., Civ. No. 2:14-cv-00217 (E.D. Va. filed May 12, 2014); *Virginia Innovation Scis., Inc. v. HTC Corp.*, Civ. No. 2:16-cv-00060 (E.D. Va. filed Feb. 8, 2016); *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, Civ. No. 2:17-cv-00422 (E.D. Va. filed Aug. 8, 2017); *Virginia Innovation Scis., Inc. v. HTC Corp.*, Civ. No. 3:17-cv-00560 (E.D. Va. filed Aug. 8, 2017).  Upon information and belief, Virginia Innovation Sciences, Inc. conducted several patent licensing activities, including negotiations (whether in person, telephonically, or electronically), and signed multiple patent licenses within the Eastern District of Virginia.

37.     In 2018, Defendant's predecessor Virginia Innovation Sciences, Inc. was merged into Defendant Innovation Sciences, LLC.  Ex. A at 4; Ex. G at 5.

38.     After said merger, Defendant filed a motion to substitute party in the E.D. Tex. Action, which explained that: "On November 9, 2018, Virginia Innovation Sciences, Inc. ("Virginia Innovation") was merged into Innovations Sciences, LLC ("Innovation"). . . . Under the merger, Virginia Innovation was terminated, and all issued and outstanding stock of Virginia Innovation was converted into limited liability company membership interests in the surviving entity, Innovation.  Accordingly, Virginia Innovation no longer holds any right, title or interest in the patents-in-suit and all such rights belong to Innovation.  Innovation is, therefore, the proper plaintiff to this lawsuit and should be substituted for Virginia Innovation as the named plaintiff."  Ex. H at 1.

39.     According to the merger documents, 100% of Tiehong "Anne" Wang's

ownership interest in Virginia Innovation Sciences, Inc. would be converted to LLC membership interests in Innovation Sciences, LLC, such that following the merger, Tiehong Wang would own 100% of Innovation Sciences, LLC.  *See* Ex. H at Ex. 2 at pg. 6.

40.     Defendant's President and CEO has declared that Defendant is the "successor of Virginia Innovation Sciences, Inc. of Alexandria, VA." Ex. G at 1.

41.     This Court has personal jurisdiction over Defendant Innovation Sciences, at a minimum because it is the successor to its predecessor, VIS, which was subject to this Court's personal jurisdiction before it merged into Innovation Sciences and purportedly legally terminated.  "If the successor is to stand thus in the place of the predecessor, it must do so for all purposes, including personal jurisdiction in the first instance." *Vianix Del., LLC v. Nuance Commc'ns.*, Inc., 637 F. Supp. 2d 356, 362 (E.D. Va. 2009).  "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Hanson & Morgan Livestock, Inc. v. B4 Cattle Co., Inc.*, No. 5:07-cv-00330, 2008 U.S. Dist. LEXIS 65707, at *20-21 (S.D. W. Va. Aug. 27, 2008) (citations omitted).

42.     "The great weight of persuasive authority permits imputation of a predecessor's actions upon its successor *whenever* forum law would hold the successor liable for its predecessor's actions." *Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 454 (4th Cir. 1990) (citations omitted) (emphasis in original).

43.     Defendant's change in corporate form cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its predecessor operated

under the patent and engaged in activities sufficient to create personal jurisdiction and declaratory

judgment jurisdiction. *Cf. Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed.

Cir. 1998).

44.     On information and belief, Defendant is subject to personal jurisdiction in this

judicial district; has previously availed itself of this venue in prior lawsuits; and/or conducts or

has regularly conducted business in this judicial district by operating within the Eastern District

of Virginia as Innovation Sciences and/or its predecessor entity, VIS f/k/a Sellerbid, Inc.

45.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because,

among other reasons, on information and belief, Defendant: is subject to personal jurisdiction in

this judicial district; has previously availed itself of this venue in prior lawsuits; and/or conducts

or has regularly conducted business in this judicial district by operating within the Eastern District

of Virginia as Innovation Sciences and/or its predecessor entity, VIS f/k/a Sellerbid, Inc.

### III.    FACTUAL BACKGROUND

#### A.    Defendant's Subject Matter Ineligible Patents

46.     The '425 Patent belongs to the same patent family as U.S. Patent 7,899,492 ("the

'492 patent").  In *Virginia Innovation Scis., Inc. v. HTC Corp.*, this Court determined that the

asserted patents in the '492 patent family were directed to an abstract idea and found to be patent

ineligible.  227 F. Supp. 3d 582, 596 (E.D. Va. 2017), *aff'd sub nom. Virginia Innovation Scis.,*

*Inc. v. HTC Corp.*, 718 F. App'x 988 (Fed. Cir. 2018).

47.     The '492 patent family considered by this Court consisted of the '492 Patent and

seven related patents:  U.S. Patent No. 8,050,711 (the "'711 patent"); U.S. Patent No. 8,903,451

(the "'451 patent"); U.S. Patent No. 8,948,814 (the "'814 patent"); U.S. Patent No. 9,118,794

(the "'794 patent"); U.S. Patent No. 8,712,471; U.S. Patent No. 9,286,853 (the "'853 patent");

and U.S. Patent No. 9,355,611 (the "'611 patent").  *Id.* at 587.

48.     The Court noted that there were no material differences amongst the claims of the individual patents in the '492 patent family.  The Court further noted the following exemplary independent claims:  Claim 21 of the '711 patent; (2) Claim 21 of the '471 patent; (3) Claim 30 of the '451 patent; (4) Claim 1 of the '814 patent; (5) Claim 1 of the '794 patent; (6) Claim 1 of the '853 patent; (7) Claim 1 of the '611 patent; and (8) Claim 23 of the '492 patent. *Id.* at 589.

49.     Figure 1 of the '492 Patent depicts a network system (104) that produces a signal that is transmitted from the base station (106) to the mobile terminal device (108).  From the mobile terminal device, the signal is transmitted to the mobile signal conversion module ("MTSCM" or "intermediary device") (112), which is contained in "housing" (110).  The MTSCM converts the mobile signal into a power level and display format that is compatible with the display monitor (114), which reproduces the original signal.  Phrased in non-technical terms, the claimed idea:  (1) takes a video feed from a mobile network (e.g., Verizon, AT&T, T–Mobile, etc.); (2) sends it to a mobile device that; (3) sends it to an intermediary device, which (4) converts the signal; and (5) displays it on a TV in your home.



FIG. 1

50.     The Court noted that "the '492 Patent relies on generic video signals, generic mobile devices, generic display monitors, and a functional conversion process.  Nothing about the '492 patent is either specific or discrete."  *Id.* at 603.

51.     Analyzing the '492 patent under the *Alice* test, the Court concluded that

the mobile network, the phone, the intermediary device, and the display monitor [in the '492 patent] all perform their conventional functions.  There [was] no contention that the MTSCM's data compression or conversion was unknown in the prior art; [Defendant] only argue[d] that it was unknown in this context.  Moreover, the process for 'converting' and 'compressing' signals is described in purely functional terms, without any algorithm or code for achieving those results. [Defendant] assert[ed] that adding the intermediary device to a method of transmitting a video signal from a network to a display device through a mobile device [was] in itself an inventive concept . . . rather than creating an innovative 'ordered combination,' the MTSCM's placement between ubiquitous conventional devices preempt[ed] future innovation in the field of mobile-to-HDTV conversion. Because preemption remains the guiding principle of the § 101 inquiry, **the**

**functional claims of the patents in the '492 patent family drive at the very heart of § 101 concerns and they must be found ineligible**.

*Id.* at 604 (emphasis added).

52.     Asserted Claims 14–18 and 45–48 of the '425 patent are similarly directed to substantially similar abstract concepts and are also therefore ineligible.

53.     Claim 14 of the '425 patent is not materially different from Claim 30 of the '451 patent belonging to the '492 patent family, which this Court also held to be directed to an abstract idea and patent ineligible under *Alice* in *Virginia Innovation Scis.*, 227 F. Supp. 3d at 587, 604.

| Claim 30 of the '451 Patent<br>Found Patent Ineligible Under Alice | Claim 14 of the '425 Patent<br>at Issue in This Case |
|---|---|
| 30.  A cellular phone comprising:<br><br>an input interface configured for receiving a multimedia signal appropriate for displaying a multimedia content on the cellular phone, wherein the multimedia signal is a compressed digital signal;<br><br>at least one processing unit configured for processing the multimedia signal,<br><br>wherein said processing the multimedia signal comprises decompressing the compressed digital signal to a decompressed digital signal,<br><br>wherein said processing the multimedia signal further comprises encoding the decompressed digital signal to produce an encoded digital signal, and<br><br>wherein the encoded digital signal comprises a decompressed high definition digital video signal; and<br><br>a high definition digital output interface configured for providing the encoded digital signal for transmission to a high | 14.  A mobile terminal comprising:<br><br>a wireless interface configured to communicate via a wireless network;<br><br>a high definition digital interface;<br><br>a high definition digital multimedia conversion circuit coupled to the wireless interface and configured to process a compressed high definition digital multimedia signal corresponding to high definition digital multimedia content;<br><br>a buffer coupled to the high definition digital multimedia conversion circuit;<br><br>a processor; and<br><br>a memory storing instructions that, when executed by the processor, cause the processor to perform operations comprising:<br><br>receiving, via the wireless interface, the compressed high definition digital multimedia signal appropriate for displaying the high definition digital |

| Claim 30 of the '451 Patent Found Patent Ineligible Under Alice | Claim 14 of the '425 Patent at Issue in This Case |
|---|---|
| definition digital television; wherein the cellular phone is configured for receiving power from the high definition digital television through the high definition digital output interface. | multimedia content on the mobile terminal; and **storing the compressed high definition digital multimedia signal in the buffer,** wherein the high definition digital multimedia conversion circuit is further configured to decompress the compressed high definition digital multimedia signal **retrieved from the buffer** to generate a decompressed signal, the decompressed signal comprising a high definition digital video signal; wherein the high definition digital multimedia conversion circuit is further configured to encode the decompressed signal to generate an encoded decompressed high definition digital signal; and wherein the high definition digital interface is further configured to communicate the encoded decompressed high definition digital signal to accommodate production of the high definition digital multimedia content on an external display. |

54.    As shown above, Claim 14 of the '425 patent is not materially different from Claim 30 of the '451 patent that was determined to be directed to an abstract idea and therefore patent ineligible.  The red highlighted text describes a receiving interface to receive a multimedia signal.  The blue highlighted text describes decompressing and encoding a signal.  The green highlighted text describes outputting the decompressed, encoded signal for display.

55.    The only substantive additions in Claim 14 of the '425 patent, highlighted in bold black, is a processor and a buffer.  The claimed processor does nothing more than execute code

that performs the functions that this Court already found patent ineligible in the '451 patent—this is the quintessential "apply it with a computer" limitation—and adds nothing patentable to the claims.  The claimed buffer adds nothing but the generic and conventional storing and retrieving of data common to all buffers, and is itself a part of generic and conventional implementation with a computer.

56.     For the same reasons that this Court found Claim 30 of the '451 patent to be patent ineligible in *Virginia Innovation Scis., Inc.*, Claim 14 of the '425 patent is also patent ineligible under 35 U.S.C. § 101.  *See* 227 F. Supp. 3d at 596–604.

57.     The claims depending from Claim 14 of the '425 patent asserted by Defendant in its ITC complaint also mirror limitations in the claims of patents that this Court also previously found to be patent ineligible in *Virginia Innovation Scis., Inc.*, as shown below.  These claims are accordingly similarly patent ineligible.

| Claims of the '451 Patent Found Patent Ineligible Under Alice | Claims of the '425 Patent at Issue in This Case |
| --- | --- |
| 32. The cellular phone of claim 30 comprises a decoder, wherein the decoder is configured for performing said decompressing the compressed digital signal to the decompressed digital signal, and wherein the decompressed digital signal is appropriate for the cellular phone to accommodate displaying the multimedia content on a display screen of the cellular phone; and wherein the cellular phone further comprises an encoder, wherein the encoder is configured for performing said encoding the decompressed digital signal to produce the encoded digital signal for transmission to the high definition digital television. | 15. The mobile terminal of claim 14, wherein the high definition digital multimedia conversion circuit comprises a decoder configured to decompress the compressed high definition digital multimedia signal; and<br><br>wherein the high definition digital multimedia conversion circuit further comprises an encoder configured to encode the decompressed signal. |

| Claims of the '451 Patent Found Patent Ineligible Under Alice | Claims of the '425 Patent at Issue in This Case |
|---|---|
| 30.  A cellular phone comprising:<br><br>…<br><br>a high definition digital output interface configured for providing the encoded digital signal for transmission to a high definition digital television;<br><br>…. | 16. The mobile terminal of claim 14, wherein the external display is a high definition digital television. |
| 30.  A cellular phone comprising:<br><br>…. | 17. The mobile terminal of claim 14, wherein the mobile terminal is a cellular phone. |
| 44. The cellular phone of claim 32, wherein the decompressed digital signal is encoded according to a high definition multimedia interface (HDMI) requirement. | 18. The mobile terminal of claim 14, wherein the high definition digital interface is a high definition multimedia interface (HDMI). |

58.     Claim 45 of the '425 patent also substantially overlaps with claims this Court already held to be directed to an abstract idea and patent ineligible under *Alice* in *Virginia Innovation Scis*.  227 F. Supp. 3d at 587, 604.  As depicted in the chart below, like Claim 14 above, Claim 45 of the '425 patent overlaps with Claim 30 and Claim 32 (which depends from Claim 30) of the patent ineligible '451 patent.

| Claim 30 and 32 of the '451 Patent Found Patent Ineligible Under Alice | Claim 45 of the '425 Patent at Issue in This Case |
|---|---|
| 30.  A cellular phone comprising:<br><br>an input interface configured for receiving a multimedia signal appropriate for displaying a multimedia content on the cellular phone, wherein the multimedia signal is a compressed digital signal; | 45.  A wireless device for communicating information comprising:<br><br>a transceiver configured to receive, via a WiFi network, a first wireless signal corresponding to information directed to the wireless device, the information |

| Claim 30 and 32 of the '451 Patent Found Patent Ineligible Under Alice | Claim 45 of the '425 Patent at Issue in This Case |
|---|---|
| at least one processing unit configured for processing the multimedia signal, | comprising a call, the first wireless signal being a compressed signal, wherein the wireless device is configured to receive an instruction to make the call; and |
| wherein said processing the multimedia signal comprises decompressing the compressed digital signal to a decompressed digital signal, | a wireless signal conversion unit including a decoder configured to perform a conversion of the first wireless signal to accommodate production of the information, |
| wherein said processing the multimedia signal further comprises encoding the decompressed digital signal to produce an encoded digital signal, and | wherein the decoder is configured to decompress the first wireless signal, said conversion comprising decompressing the first wireless signal; |
| wherein the encoded digital signal comprises a decompressed high definition digital video signal; and | **wherein the wireless device is further configured to communicate information for managing a status update via the WiFi network in connection with a second wireless signal regarding the status update, the second wireless signal being transmitted from a sensing device via a short range wireless communication channel, the second wireless signal comprising information associated with an identifier for the sensing device; and** |
| a high definition digital output interface configured for providing the encoded digital signal for transmission to a high definition digital television; | |
| wherein the cellular phone is configured for receiving power from the high definition digital television through the high definition digital output interface. | |
| 32. The cellular phone of claim 30 comprises a decoder, wherein the decoder is configured for performing said decompressing the compressed digital signal to the decompressed digital signal, and wherein the decompressed digital signal is appropriate for the cellular phone to accommodate displaying the multimedia content on a display screen of the cellular phone; and wherein the cellular phone further comprises an encoder, wherein the encoder is configured for performing said encoding the decompressed digital signal to produce the encoded digital signal for transmission to the high definition digital television. | **wherein the WiFi network is separate from the short range wireless communication channel.** |

59.     Like Claim 14, Claim 45 is directed to nothing more than abstract ideas.  The preamble and first three limitations of Claim 45 of the '425 patent mirror limitations and concepts contained in the patent ineligible '451 patent, as depicted above in text highlighted variously in purple, red and blue.  As this Court noted, the claimed signal conversion module and its decompressing of compressed signals is claimed purely on its function without any algorithm for achieving those results.  227 F. Supp. 3d 604.

60.     The only added concept in Claim 45 of the '425 patent, as compared to the patent ineligible Claim 30 of the '451 patent, is contained in the last two limitations.  These last two limitations add a completely separate functionality to the nebulous "wireless device for communicating information":  the claimed wireless device may receive a signal containing an update from another device.

61.     Simply receiving a status update from a sensing device is a well-known abstract idea; for time immemorial, a human yelp in response to pain has provided an update to that human's status (and whose voice even serves as an identifier).  This additional concept amounts to functionally claiming the addition of the well-known and conventional function of receiving status updates from another device into the otherwise nondescript "wireless device for communicating information."  *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) ("wirelessly communicating status information" held to an abstract idea).  Indeed, nothing in the last two limitations appears to otherwise limit the claimed device—by algorithms or otherwise—and instead serve only to limit the technological environment in which a general purpose wireless computing device operates.  Accordingly, like its predecessor claims of the '492 patent family, Claim 45 of the '425 patent is also directed to patent ineligible subject matter.

62.     Further, the claims depending from Claim 45 of the '425 patent asserted by Defendant in its ITC complaint also add nothing patentable to Claim 45.  Claim 46 requires the short range wireless communication channel to be a "Zigbee channel," thereby limiting the claim to a particular technological environment, but otherwise effects no improvement to the claimed invention.  In the '425 patent, the only mention of Zigbee is as one of a number of well-known communication protocol standards for wireless personal area networks.

63.     Claim 47 of the '425 patent fares no better, requiring the received signal to be a compressed video signal in relation to a video call, again doing nothing but limiting the claim to a particular technological environment, that of video calling.  Limiting the application of the independent claim to the space of video calling effects no technological improvement to the claimed invention, and adds nothing patentable to a claim that is otherwise patent ineligible.

64.     Claim 48 of the '425 patent requires a data package that includes information for the network address for the WiFi network and a device identifier for the claimed wireless device.  But this adds nothing but a generic and conventional implementation detail that is part and parcel with a system receiving data on a WiFi network.  This is akin to an independent claim that covers sending a letter to a customer, and adding a dependent claim requiring that the letter include the address of the customer.  Such generic and conventional implementation details are fundamental to implementation of the abstract idea and add nothing patentable to an otherwise patent-ineligible claim.

## COUNT 1

### Declaratory Judgment of Patent Ineligibility of U.S. Patent No. 10,104,425

65.     Plaintiffs re-allege and incorporate all of the preceding paragraphs as if fully set forth herein.

66.     A concrete and immediate controversy has arisen between the parties regarding the patentability of the '425 patent.

67.     For at least the reasons alleged above, the claims of the '425 patent are directed to ineligible subject matter and thus fail to meet the requirements of 35 U.S.C. § 101.

68.     Plaintiffs seek and are entitled to a declaratory judgment that the claims of the '425 patent are directed to ineligible subject matter and are therefore unpatentable under 35 U.S.C. § 101.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment in its favor and against Defendant as follows:

1.     Declaratory judgment that the claims of the '425 patent are not patentable under 35 U.S.C. § 101.

2.     Awarding Plaintiffs costs incurred in connection with this action; and

3.     For such other and further relief as the Court deems just and proper.

DATED:  December 26, 2019


Yar R. Chaikovsky (*pro hac vice to be filed*)
yarchaikovsky@paulhastings.com
Philip Ou (*pro hac vice to be filed*)
philipou@paulhastings.com
Bruce Yen (*pro hac vice to be filed)*
bruceyen@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone:  (650) 320-1800
Facsimile:  (650) 320-1900

PAUL HASTINGS LLP

By: */s/ Blair M. Jacobs*
    Blair M. Jacobs
    blairjacobs@paulhastings.com
    Virginia State Bar No. 32010
    PAUL HASTINGS LLP
    875 15th Street NW
    Washington, DC 20005
    Telephone:  (202) 551-1700
    Facsimile:  (202) 551-1705


    Attorneys for Plaintiffs
    *HTC Corporation and HTC America, Inc.*